IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BYRON D. BABB, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 10-CV-790-TLW |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

### OPINION AND ORDER

Plaintiff Byron Babb seeks judicial review of a decision of the Commissioner of the Social Security Administration denying his claims for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3)(A). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. [Dkt. # 9].

Plaintiff's applications for disability insurance benefits and supplemental security income were filed on January 31, 2006 alleging an onset date of October 15, 2005. [R. 417]. Administrative Law Judge ("ALJ") Michael Kirkpatrick held a hearing on August 26, 2008. [R. 414]. Plaintiff was incarcerated and testified by speaker phone during the hearing. [R. 15, 181, 416]. On September 15, 2008, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the SSA. [R. 15-26]. The Appeals Council denied review initially on November 16, 2006, and upon reconsideration on May 24, 2007. [R. 15]. The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481. On December 10, 2010, plaintiff filed the subject action with this Court. [Dkt. # 2].

The role of the Court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is limited to determining whether substantial evidence supports the decision and whether the correct legal standards were applied. See Briggs ex. rel. Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Casias v. Secretary of Health & Human Service, 933 F.2d 799, 800 (10th Cir. 1991).

## Background

Plaintiff was born on May 7, 1962, and was 46 years old on the date of the hearing before the ALJ. [R. 420]. He has a GED, and completed 12 hours of studies at Tulsa Junior College. [R. 133, 420]. Plaintiff has prior relevant work as a carpenter, working for companies who built cabinets and fixtures for commercial retail stores. [R. 420]. Plaintiff has never married and does not have children. Plaintiff's medical records support a long history of polysubstance dependence including, alcohol, amphetamine, cocaine, opiate, and benzodiazepine abuse. Plaintiff's diagnoses include major depressive disorder with bipolar effect, Hepatitis C, and post traumatic stress disorder (PTSD). In 1990, plaintiff had lumbar disk surgery following injury from a motor vehicle accident. He was hospitalized in 2003, for a fractured left clavicle. He has a screw in his right shoulder from an old football injury, and he claims a knee impairment from loss of cartilage. Plaintiff has three arrests for driving under the influence of alcohol (DUI). He spent two months in a county jail for a DUI offense, and 65 days incarcerated at Jackie Brannon Correctional Center for a DUI felony conviction.

[R. 181, 423]. Plaintiff has also been hospitalized two times for manic depression, and four times for alcohol and drug detoxification. [R. 229]. In 1989, plaintiff was treated at the Grand Lake Mental Health Center; in 1990 at St. John's Behavioral Health Services; in 2001 at Laureate Psychiatric Clinic; and in 2005 at the Tulsa Center for Behavioral Health.[1] [R. 181]. Between August 12, 2004 and October 12, 2004, plaintiff received out-patient treatment for polysubstance abuse and depression with Children & Family Services. [R. 153]. From April 30, 2004 through November 23, 2006, plaintiff received counseling, educational programs and medication management at the 12 & 12 Transition House. [R. 266-328]. He was discharged from the program on November 23, 2006, because he refused to provide a urine analysis, after admitting to an unauthorized use of Oxycodone and Loritabs. [R. 268].

## Decision of the ALJ

By application of the 5-step sequential evaluation, the ALJ found that plaintiff had not been employed since October 15, 2005, the alleged disability onset date. [R. 17]. His severe impairments are degenerative disc disease of the lumbar spine, with a history of discectomy surgery in the remote past, Hepatitis C, gastroesophageal reflex disease, right shoulder arthritis, bipolar disorder, and history of drug and alcohol abuse. [R. 18]. He found that plaintiff's impairments, singly and in combination, did not meet or equal one of the listed impairments, and he is unable to return to his past work as a carpenter. The ALJ found that plaintiff had the physical residual functional capacity ("RFC") to perform medium exertional work, and the mental RFC to understand, remember, and

---

[1] Plaintiff's mother initiated his involuntary inpatient treatment at Tulsa Center for Behavioral Health because she was mad at him for using methamphetamine, failing to go to work, and losing his job. She claimed he was suicidal, which plaintiff denied. Immediately prior to his commitment to the treatment center, plaintiff admitted to drinking two pints of vodka per day, following a four day binge on methamphetamine. [R. 176].

carry out at least simple, routine, unskilled tasks that do not require interacting with the general public. [R. 19]. The ALJ noted that plaintiff was also able to perform light and sedentary work. In considering his age, education, work experience, RFC, and after consulting a vocational expert, the ALJ found plaintiff could perform alternate work, such as a cleaner or in food production (e.g. a meat trimmer) and that such jobs existed in sufficient numbers in the regional and national economy. [R. 25]. This finding was made at the fifth step in the 5- step inquiry outlined in Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing the five steps in detail).[2]

## Discussion

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C.§ 423 (d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). The term "disability" is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. A claimant is determined to be disabled only if he is unable to do his previous work; and considering his age, education, and work experience, cannot perform any other kind of work in the regional or national economy. 42 U.S.C. § 423(d). To meet this burden plaintiff must provide medical evidence of an impairment and the severity of an impairment during the time of his alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). Disability is a physical or mental impairment "that results from

---

[2] The five-step sequence provides that the claimant (1) is not gainfully employed, (2) has a severe impairment, (3) has an impairment which meets or equals an impairment presumed by the Secretary to preclude substantial gainful activity, listed in Appendix 1 to the Social Security Regulations, (4) has an impairment which prevents her from engaging in her past employment, and (5) has an impairment which prevents her from engaging in any other work, considering her age, education, and work experience. Ringer v. Sullivan, 962 F.2d 17 (10th Cir. 1992) (unpublished) citing Williams v. Bowen, 844 F.2d at 750-52.

4

anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a).

Plaintiff raises three issues on appeal.

1. Whether the ALJ failed to make a proper determination at step 5 of the sequential evaluation process.

2. Whether the ALJ failed to properly consider the medical evidence of record.

3. Whether the ALJ failed to make a proper credibility determination.

[Dkt. # 15 at 2].

Plaintiff alleges that at step 2 of the sequential evaluation, the ALJ found that right shoulder arthritis was one of plaintiff's severe impairments. In so finding, plaintiff contends the ALJ erred in failing to include a reaching limitation in his hypothetical question to the vocational expert. This purportedly rendered a faulty opinion by the vocational expert as to the types of alternative work plaintiff could perform. The ALJ then purportedly erred at step 5, in finding that plaintiff had the capacity to clean or trim meat, because these alternative jobs require reaching with his arms. Plaintiff further contends the ALJ erred in failing to evaluate his personality disorder in making his step 5 determination that plaintiff can work.

Plaintiff also contends the ALJ ignored the assessments of the agency consultants who opined that plaintiff had moderate mental limitations in concentration, persistence or pace and in failing to

include this moderate limitation in his RFC assessment and hypothetical question to the vocational expert. Plaintiff contends both the agency consultants and the ALJ "totally ignored" plaintiff's numerous inpatient mental health treatments. Thus, plaintiff argues the ALJ's decision is not supported by substantial evidence.

Additionally, plaintiff lists an array of reasons to support his claim that the ALJ's credibility assessment is against the weight of the evidence, and that the ALJ failed to apply the correct legal standards in making his credibility determination.

A determination that an impairment is "severe" at step two requires only a de minimus showing. Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005). In determining plaintiff's RFC, the ALJ is required to consider the effect of all of plaintiff's medically determinable impairments, both those considered severe and those considered not severe. See SSR 96-8P. Here, the ALJ clearly showed that he considered all plaintiff's alleged impairments in formulating his RFC and conclusion at Step 5 of his evaluation.

First, as recognized by the ALJ, plaintiff alleged his inability to work was due to bipolar disorder, back problems, and Hepatitis C. [R. 20]. Plaintiff did not plead that right shoulder arthritis limited his ability to work. The ALJ inquired about his mental and physical limitations at the hearing. As to his right shoulder, plaintiff testified he had surgery in 1979 to insert a screw to secure his shoulder after an injury he received playing football. [R. 424]. Plaintiff said that although he was told in 1979 that he would only have 50 percent rotation in his right shoulder, his shoulder was "doing alright through the years" and "better" than expected. [R. 425]. Plaintiff testified he could not do push ups, but he was doing all right with his shoulder. The surgery was good, he wakes up with his arm hurting, it "probably needs some medical attention" because it has "just played out."

[R. 427-28]. The ALJ noted that most of plaintiff's medical records were from his treatment at mental health facilities for drugs and alcohol abuse, withdrawal symptoms, and in conjunction with his legal problems. [R. 20]. The ALJ noted there was a "paucity" of actual treatment records and, of those, they contained relatively "benign findings." [R. 21].

Second, in formulating his mental and physical RFC assessment, the ALJ considered the dearth of treatment records, the limited findings, in conjunction with the physical and mental consultative evaluations which were ordered by the Commissioner and performed by agency physicians and psychologists. From a review of these records, the ALJ concluded that plaintiff could perform unskilled medium work. The ALJ also took plaintiff's subjective allegations of pain-producing impairments into consideration, but found plaintiff's testimony in this regard, less than credible. [R. 21].

Third, to support his RFC assessment, the ALJ found that the records contained <u>no</u> evidence of actual treatment for any of plaintiff's alleged physical impairments. Therefore, the ALJ relied on and adopted the physical RFC assessment of agency consultant David Bissell, M.D. that plaintiff has the physical RFC "to lift and/carry at least 50 pounds occasionally and 25 pounds frequently; to stand and/or walk for at least six hours total during an eight-hour workday, with normal breaks; to sit for at least six hours total during an eight-hour workday, with normal breaks; and to climb and stoop occasionally." [R. 19, 259]. Dr. Bissell also opined that plaintiff had an unlimited ability to push and pull with his hands. Dr. Bissell specifically noted that plaintiff complained of right shoulder pain, but based on Dr. Bissell's examination of plaintiff, he opined plaintiff's range of motion in his right shoulder and knees were normal. [R. 260]. Thus, other than plaintiff's own testimony, which the ALJ found less than credible, there was no other evidence, objective or otherwise, that conflicts

with Dr. Bissell's opinion.[3] As discussed below, the ALJ did a through evaluation of plaintiff's subjective complaints of pain under the applicable standards and concluded that plaintiff's allegations were not entirely credible as to intensity, persistence, and limiting effects of his purported symptoms. Thus, the Court finds that the ALJ's RFC assessment and step 5 determination are supported by substantial evidence. The Court will not reweigh the evidence.

Next, plaintiff contends the ALJ's hypothetical was faulty because it did not account for plaintiff's right shoulder arthritis. Plaintiff is correct that hypothetical questions must reflect with precision all of plaintiff's impairments. However, they need only reflect impairments and limitations that are borne out by the evidentiary record. Evans v. Charter, 55 F.3d 530, 532 (10th Cir. 1995). The Court finds that the limitations contained in the ALJ's hypothetical question did reflect and account for the impairments and limitations borne out by the evidence.

Plaintiff claims he was diagnosed with a personality disorder and that the ALJ purportedly erred in failing to evaluate his personality disorder in his decision. The Court finds no error in this regard. The ALJ stated that he had reviewed all the evidence, including the treatment records and the psychological evaluations conducted by the agency consultants. Plaintiff does not identify any medical source statement that opines that any of his diagnosed mental impairments limit his capacity to perform alternative work. His claim is merely one of a general allegation, which is unsupported by evidence. The ALJ accommodated plaintiff's mental impairments by limiting his work to simple,

---

[3] The Court agrees with the Commissioner that the administrative record contains no evidence linking plaintiff's diagnosis of right shoulder arthritis with any limitation, let alone a reaching limitation. A diagnosis of a condition does not necessarily mean that it is disabling. See Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990); Bernal v. Bowen, 851 F.2d 297, 301 (10th Cir. 1988). Plaintiff's records show that he had an unimpaired ability to reach. [R. 178]. Plaintiff has a normal range of motion in all five arm measurements. [R. 229, 234]. See (Dkt. # 16 at 3).

routine, and unskilled tasks that do not require interacting with the general public. The evidence clearly shows that plaintiff's treatment for mental impairments was directly linked to his drug and alcohol abuse. Agency consultant David Hansen, Ph.D. opined that plaintiff's mental status was normal and that plaintiff was not significantly limited in his ability to work if it is limited to simple instructions. Dr. Hansen opined plaintiff could maintain attention and concentration for extended periods, sustain an ordinary routine, respond appropriately to criticism, and get along with coworkers. [R. 255, 237]. Plaintiff points to no evidence that refutes Dr. Hansen's opinion.

Plaintiff contends the ALJ failed to properly consider the medical evidence. Plaintiff claims the agency consultants opined that plaintiff had moderate limitations in concentration, persistence or pace, but they did not carry this moderate limitation in their mental RFC assessment. Plaintiff also contends that the ALJ erred in not including this moderate limitation in his hypothetical to the vocational expert.

There is no evidence to support plaintiff's allegation that his moderate limitation in concentration, persistence or pace would preclude his ability to work as a cleaner or meat trimmer. "Moderate limitation" is frequently defined on the agency standard evaluation sheets used by the consultants as a limitation that affects but does not preclude the ability to function. See e.g. Sayles, Astrue, 275 Fed. Appx. 790 (10th Cir. 2008) (unpublished).[4] Moreover, the agency consultants were consistent in their opinion that plaintiff's severe mental impairments were linked to his polysubstance abuse and did not preclude plaintiff's capacity to perform simple and routine work, as long as he had limited contact with the general public. Dr. Angelo Dalessandro opined that

---

[4] Unpublished decisions are not precedential, but may be cited for their persuasive value. See Fed. R. App. 32.1: 10th Cir. R. 32.1.

plaintiff's mental problems appeared to be in remission. [R. 229]. Dr. Hansen opined that plaintiff's mental status was within normal range. [R. 237]. Dr. Laura Lochner, Ph.D. opined that plaintiff could perform simple tasks with routine supervision; he could relate to supervisors and peers on a superficial basis; and he could adapt to a work situation, as long as his contact with the general public was limited. [R. 256]. The ALJ adopted her opinion in his decision. Dr. Lochner opined that plaintiff had moderate limitations in concentration, persistence or pace. Yet, in her consultant notes, Dr. Lochner elaborated and explained that plaintiff retains the capability to perform alternative work. She evaluated plaintiff using objective standardized mental health testing techniques and found that plaintiff's

> [s]peech was logical, organized and goal directed without evidence of dysarthria or paraphasias. Comprehension was intact at a conversational level. Recall of remote and recent information was intact. Affect was mildly anxious. He was cooperative and pleasant. Rapport was easily established. No evidence of responding to internal stimuli. There was no behavioral evidence of prominent distractibility or inattention. Folstein Mini Mental Status Evaluation score was 27 out of 30. He was fully oriented. Confrontational naming and sentence repetition was intact. He was able to follow a 3-step verbal command and a one-step written command. His mental status was within normal limits. He is capable of managing funds as long as he is clean and sober.

[R. 252]. The Court finds that plaintiff's claim has no merit.

As his final issue, plaintiff contends the ALJ failed to perform a proper credibility determination as to his evaluation of plaintiff's subjective allegations of pain-producing physical impairments. The ALJ set forth a summary of plaintiff's testimony:

> Claimant alleged that he could not work due to bipolar disorder, back problems, and Hepatitis C. (Exhibit 5E). He testified at the hearing that he had been incarcerated since June 18, 2008 due to driving while intoxicated (DUI), and that he had mental problems (paranoia, getting angry quickly, etc.), treated by Prozac and Elavil. He testified that he had back surgery in 1990, right shoulder surgery in 1979, and that he needed knee surgery. He testified that he was an alcoholic, and that he had a history

of drug abuse including methamphetamine.  He testified that he could lift and carry 20 pounds, walk one mile, stand 15 to 30 minutes, and sit a few hours.

[R. 20].  The ALJ did make a credibility determination in his decision:

After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

[R. 20].

The factors the ALJ should take into consideration when evaluating the credibility of pain testimony include:

[T]he levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, and the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Hargis v. Sullivan, 945 F.2d 1882, 1489 (quoting Huston v. Bowen, 838 F.2d 1125, 1132 and n. 7); in accord Luna v. Bowen, 834 F.2d 161, 165-66 (10th Cir. 1987).  A review of the ALJ's decision establishes that he took into account many of these factors.  The ALJ pointed out that plaintiff had not sought medical treatment for any of his alleged physical impairments during the relevant period, nor had he offered evidence that he had been refused medical treatment. [R. 20].  Plaintiff's medical treatment focused on his drug and alcohol dependency and related problems. [R. 20].  Although plaintiff complained of back pain, there was no evidence to show this pain interfered with his daily activities.  The ALJ relied upon Dr. Dalessandro's opinion that plaintiff had no sensory or motor deficits, he could walk on his heels and on his toes, his gait was normal and he had no problems

getting onto or off the examination table. [R. 22].

The ALJ analyzed subjective factors by conducting a very lengthy analysis of plaintiff's testimony compared to evidence of record. The ALJ noted that plaintiff claimed he took Elavil and Paxil in the past to treat depression. But plaintiff admitted that he had not taken this medication since he was released from jail "four months ago." [R. 20]. Plaintiff gave contradictory statements about his past employment, first stating that he was laid off and then admitting that he was fired for failing to show up for work. The fact plaintiff was fired was corroborated by his mother's recorded statement that she was angry because methamphetamine interfered with her son going to work, so he was fired. The ALJ found that the medical evidence "is simply not consistent with an impairment or impairments that might reasonably limit the claimant's activities." [R. 23].

Plaintiff failed to offer any objective evidence to substantiate his allegation of a disabling physical impairment. [R. 22]. The lack of objective corroborative evidence is a relevant factor in determining credibility. See Diaz v. Sec'y of Heath & Human Services, 898 F.2d 774, 777 (10th Cir. 1990). The ALJ recognized this fact. The ALJ cited medical evidence from other agency consultants whose physical examination of plaintiff refuted his allegations. The ALJ also illustrated instances of plaintiff's inconsistent written and oral statements. Evidence of inconsistency impeaches credibility. See Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988). The ALJ noted that plaintiff missed scheduled treatment appointments. In fact, plaintiff's treatment services were terminated with the Associated Centers for Therapy, after he missed four scheduled appointments. [R. 21]. The failure to follow prescribed treatment is a legitimate consideration in evaluating the validity of an alleged impairment. Id. (Secretary properly discounted claimant's alleged impairment due to poorly controlled seizures where claimant failed to follow prescribed

treatment regime). The ALJ reviewed the medical files and found no medical evidence that plaintiff has any physical ramifications to evidence his purported infirmity. The ALJ found no evidence that plaintiff was experiencing any side effects from taking medication. [R. 23]. Finally, the ALJ reviewed the medical records and found no evidence that plaintiff complained to his treating physicians that he had any physical limitations. [R. 23]. The ALJ concluded that the evidence failed to show any debilitating pain. The ALJ found plaintiff exhibited relatively mild symptoms. [R. 23]. All of the above are proper factors in evaluating credibility.

Plaintiff is not challenging the accuracy of the medical records relied on by the ALJ. Thus, the Court finds the ALJ provided substantial evidence to support his findings on the issue of credibility. From a *de novo* review of the entire record, the ALJ's credibility determination is clearly supported by substantial evidence. Credibility determinations are peculiarly the province of the finder of fact, and the Court should affirm that finding if it is closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. Hill v. Astrue, 289 Fed. Appx. 289, 294 (10th Cir. 2008) (unpublished). Such a link exits here.

## Conclusion

The Court finds that there is substantial evidence in the record to support the ALJ's decision. The Court further finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts. Accordingly, the decision of the Commissioner finding plaintiff not disabled is hereby AFFIRMED.

SO ORDERED this 8th day of February, 2012.

T. Lane Wilson
United States Magistrate Judge

13